## May v. May.

June 22, 1943.

P. B. Stratton for appellant.

E. J. Picklesimer for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

Margie May instituted this proceeding in March, 1941, seeking a divorce on the ground of cruel and inhuman treatment, and a restoration of property rights. Dover May filed an answer and counterclaim setting up his grounds for divorce, and asked that certain properties, which he stated he owned at the time of the marriage in 1935, be restored to him. Dover was granted a divorce, and two pieces of property were restored to him. He was required to convey to Margie a one-half interest in the property known as the home place. Margie is appealing from the part of the judgment which restored the properties to Dover.

The marital road of the Mays was a rough one, and the evidence amply justifies the granting of the divorce to Dover. Margie had been married twice before; her second marriage having been a bigamous one. Dover had been married previously and had ten children, eight of whom made their home with him. Margie had no de-

pendents. They lived at the Dover May home place. Estimates of value on the home place ranged from $2,500 to $4,000. Dover owned or had previously owned a piece of land known as the Barrett Fork property, the estimated value of which ran from around several hundred dollars as high as two thousand dollars. He also owned a one-half interest in 50 acres of mineral lands, his interest therein being valued at $200. Dover was heavily involved financially in 1935. There was a debt of some $1,100 owing against the home place, and, according to Dover's statements and other testimony in support thereof, a brother-in-law, H. H. Meek, had bid in the Barrett Fork property at a sheriff's sale for a debt of some $500, which Dover owed him. Dover said Meek had agreed to hold the property for him and he had reduced the indebtedness to $426 at the time of his marriage. Dover and Margie entered into an agreement shortly after they were married under which she paid off the debt against the home place and executed to the Meeks a note for $426 due in one year. This note recites it was in consideration of the purchase price of a tract of land (Barrett tract) which was conveyed to Dover May on April 23, 1935, the date the note was made. Dover's version of the transaction was that Margie agreed to pay the debts against the home place and the Barrett Fork property, which totaled $1,550, if he would convey to her his interest in the home place, and that he was to get the Barrett Fork property. Margie paid off the debts against the home place and the deed for that tract recited a consideration of $1,550. The Meeks executed a deed to Dover for the Barrett Fork property, which was never recorded. Margie's version of the transaction was that she was to get both places, and that the deed to the Barrett Fork property was made to Dover in an attempt to defraud her. Dover said that, when the $426 note came due, Margie would not agree to pay it unless the Meeks executed a deed to her, and that this was done. Margie contends, of course, the deed should have been made to her in the first place, that she paid the full consideration for the property, and, therefore, was entitled to it. Sometime in September, 1936, Dover was involved in a liquor charge in the Federal Court. On September 21st, he executed a deed to Margie, with a recited consideration of $100, releasing any claim to the Barrett Fork property. On the same day he executed a deed to her for his one-half interest in the mineral lands for a

recited consideration of $200. She says that she paid the considerations, but she produced no checks to show this, as she had done in the case of the payments on the home place. Dover says there was no consideration for either of the deeds, and that he made them in an effort to keep peace in the family. In May, 1938, Margie conveyed a one-half interest in the home tract to a trustee, who, in turn, conveyed it to Dover. Dover said that this deed was executed under an agreement whereby he was to dismiss a divorce proceeding which he had filed against Margie.

There is sharp conflict in the evidence as to the transactions concerning the Barrett Fork property, and the question of consideration for the two conveyances made in September, 1936. That Dover was heavily involved at the time of his marriage in 1935 is beyond dispute. It is clear also that Margie paid off the indebtedness against the home place, as well as the Barrett Fork property. She claims also that she spent several thousand dollars in support of Dover and his children. On the other hand, Dover says he provided amply for the family.

We have reached the conclusion from our examination of the record that Dover's version of the transaction under which Margie was to pay the $1,550 indebtedness against the home place and the Barrett Fork place, upon the consideration that he convey to her the home place, is the more plausible one. There was an indebtedness of some $1,100 against that property, and one in excess of $400 against the Barrett Fork property. These amounts approximate $1,550. Dover did convey his interest in the home place to Margie and the $426 note which she gave the Meeks recited that the property had been conveyed to Dover and a deed was actually executed to him for it; and, as we have indicated previously, there is testimony in support of that of Dover as to his version of this transaction. The parties had been married only a few months when their difficulties began, and the land transactions entered into by them in 1936 and 1938 were made, in all probability, in attempts to adjust their differences. The judgment restored to Margie the one-half interest in the home place which she conveyed to Dover in 1938, and restored to him the Barrett Fork place and his interest in the mineral lands.

Since we entertain no more than a doubt as to the correctness of the chancellor's ruling on the restoration

of the property rights, we conclude that the judgment should be and it is affirmed.

Judge Ratliff not sitting.